832 A.2d 170

### The PACK SHACK, INC.

v.

### HOWARD COUNTY, Maryland.

### No. 55, Sept. Term, 2001.

Court of Appeals of Maryland.

Sept. 10, 2003.

Howard J. Schulman (Joseph S. Kaufman, Schulman & Kaufman, LLC, on brief), Baltimore, for petitioner.

Jonathan L. Katz, Silver Spring, David A. Wasserman, Winter Park, Amicus Curiae, for petitioner.

Louis P. Ruzzi, Senior Asst. Cty. Solicitor (Barbara M. Cook, Howard Cty. Solicitor, on brief), Ellicott City, for respondent.

Argued before BELL, C.J., ELDRIDGE, RAKER, WILNER, CATHELL, HARRELL and BATTAGLIA, JJ.

ELDRIDGE, J.

In this action, the Pack Shack, Inc., ("Pack Shack") challenges a zoning ordinance enacted by Howard County that places restrictions on the location and operation of adult businesses. The issue before us is whether the Howard County ordinance violates Article 40 of the Maryland Declara-

tion of Rights and the First Amendment to the United States Constitution. We shall hold that it does.

## I.

On December 1, 1997, the Howard County Council unanimously passed Bill 65–1997, which was later signed into law by the County Executive. The Bill amended various sections of the Howard County Zoning Regulations, by defining adult entertainment businesses and imposing location and other restrictions on their operation. The stated purpose of the Bill was to control the "secondary impacts" associated with the presence of adult businesses, including, allegedly, "increased crime levels, depreciation of property values, neighborhood deterioration and negative perceptions of neighborhood character." The County Council did not conduct its own study on secondary effects, relying on studies from other jurisdictions on similar businesses.

The Bill amended § 103 of the Howard County Department of Planning and Zoning's Regulations, and defined an adult entertainment business as follows:

"*Adult Entertainment Business:* 'This term includes the following types of businesses:

'a. *Adult Book or Video Store:* A business establishment . . . that offers for sale or rental any printed, recorded, . . . filmed or otherwise viewable material, or other paraphernalia, where a significant or substantial portion of the stock in trade is characterized by an emphasis on matters . . . relating to sexual activities.

* * *

'b. *Adult Movie Theater:* A business establishment . . . that regularly or routinely offers for viewing on the premises films, videos or similar material characterized by an emphasis on matters . . . relating to sexual activities.

'c. *Adult Live Entertainment Establishments:* A business establishment . . . that regularly and routinely features

... live entertainment ... performances characterized by sexual activities, real or simulated, or nudity.' "

Pack Shack is in the business of the sale and rental of sexually explicit videotapes, books and periodicals, and the sale of lingerie and other materials; it also offers individual viewing booths for the display of adult videos. Pack Shack does not dispute that, under the definition in the Bill quoted above, it is an adult entertainment business and subject to the zoning ordinance.

Adult entertainment businesses, thus defined, are permitted as "a matter of right" in specific zones, subject to location setbacks and other conditions, including a license requirement. The Bill, as it amended § 128.H of the Zoning Regulations of Howard County, states in pertinent part as follows:

"2. **Location**

* * *

"The building containing an adult entertainment business shall be located

"a. At least 2500 feet from any other building containing an adult entertainment business. Only one adult entertainment business is allowed per building.

"b. At least 500 feet from residential ... Zoning Districts, ...

* * *

"e. At least 500 feet from the boundary of a parcel occupied by an academic school ... child day care center, religious facility as the principal use, public library, public park or public recreational facility, provided the use existed prior to the establishment of the adult entertainment business."

"3. **Interior Arrangement**

"The interior of the establishment shall be arranged so that employees and customers can observe all areas open to customers. Viewing booths shall not be equipped with ... any ... device that allows a booth's interior to be screened from the view of employees or other customers."

**"4. Outside Display or Visibility**

"No merchandise, material or performances depicting, . . . or relating to sexual activity or nudity . . . shall be visible from outside the adult entertainment business."

\* \* \*

**"6. Required Permit**

"a. An annual zoning permit is required for any adult entertainment business. Prior to commencing operation of the business, the business owner and property owner must apply for a zoning permit from the Department of Planning and Zoning. Owners of the property on which existing businesses are located and existing business owners must apply for a permit within 30 days of the effective date of the permit requirement. The permit application shall indicate the address and location of the building to be occupied by the business as well as floor plans or other information that will enable the Director of Planning and Zoning to determine whether the use will comply with [the other restrictions imposed in] this Section. The permit application shall also include the name and address of each owner of the business and each owner of the property on which the business is located. If the owner of the business is not a natural person, the application shall list the names and addresses of all natural persons who have a financial interest in the business and all natural persons who are authorized to act for the owner of the business. In addition, if the owner of the property on which the business is located is not a natural person, the application shall list the names and addresses of all natural persons who have a financial interest in the property and all natural persons who are authorized to act for the owner of the property.

"b. The Director of Planning and Zoning shall act on the permit application within 30 days of receipt of the application by the Department of Planning and Zoning. The permit shall be approved if the use complies with [the conditions] of this section.

"c. The applicant may ... commence operation of the adult entertainment business after applying for the zoning permit but before the permit is approved. However, if the Director of Planning and Zoning subsequently denies the permit because the business does not comply with [the provisions] of this section, the business must cease operating.... If the applicant appeals the Director's denial of the permit, the business may continue to operate pending the outcome of the appeal."

Pack Shack is located in Ellicott City in Howard County, in a district zoned as "business: general," where adult entertainment businesses are permitted, subject to the restrictions set forth above.

## II.

On February 3, 1999, Pack Shack filed a complaint in the Circuit Court for Howard County, seeking injunctive relief and a declaratory judgment. As later amended, the complaint asserted that the ordinance violated Article 40 of the Maryland Declaration of Rights and the Free Speech and Free Press clauses of the First Amendment to the United States Constitution, which are applicable to state and local laws by virtue of the Fourteenth Amendment.[1] The cause of action raising the federal constitutional challenges was brought under the Civil Rights Act of 1871, 42 U.S.C. § 1983.

---

1. Article 40 of the Maryland Declaration of Rights provides as follows:
 "**Article 40. Freedom of press and speech.**
 "That the liberty of the press ought to be inviolably preserved; that every citizen of the State ought to be allowed to speak, write and publish his sentiments on all subjects, being responsible for the abuse of that privilege."
 The First Amendment to the United States Constitution states:
 "**AMENDMENT I—FREEDOM OF RELIGION, OF SPEECH AND OF THE PRESS; PEACEFUL ASSEMBLAGE; PETITION OF GRIEVANCES**
 "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the free-

In its complaint, Pack Shack alleged that the "purpose, intent and effect of Bill 65–1997[was] to chill and inhibit and otherwise prevent the exercise of the freedom of speech" and "to prevent Plaintiff and all similar adult establishments from doing business" in the County. Pack Shack claimed that the ordinance suffered from several other specific constitutional infirmities. Pack Shack alleged the County did not have sufficient evidence that the restrictions placed by the ordinance would serve a substantial government interest. It also asserted that the licensing requirement set forth in the ordinance lacked adequate procedural safeguards and, therefore, was an unlawful prior restraint on constitutionally protected speech, and that the ordinance was not narrowly tailored so that any incidental restriction on speech was no greater than necessary to achieve the County's goal. Lastly, Pack Shack contended that the ordinance failed to provide reasonable alternative channels of communication, because there could be as few as four sites in the entire County that complied with all of the requirements.

Howard County filed a cross-claim for injunctive relief, seeking enforcement of the zoning ordinance. Howard County also filed a third party complaint against the owner of the property on which Pack Shack operates its business. The County argued that the purpose of the Bill was to limit the adverse secondary effects associated with adult businesses,

---

dom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances."

The Fourteenth Amendment to the United States Constitution states, in relevant part:

"**AMENDMENT XIV—CITIZENSHIP; PRIVILEGES AND IMMUNITIES; DUE PROCESS; EQUAL PROTECTION;** * * *

"**Section 1.** All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; not deny to any person within its jurisdiction the equal protection of the laws."

and that the ordinance was sufficiently narrowly tailored to achieve that goal. The County also asserted that the licensing scheme was not a prior restraint on speech because the business could commence, or continue, operation while its license application was pending, including the appeal process.

After discovery, the County filed a motion for summary judgment which was denied. Prior to the non-jury trial, the parties stipulated that Pack Shack was an adult entertainment business for the purpose of the zoning ordinance and that it was in violation of the 500 foot setback requirement.[2] Following the trial, the Circuit Court for Howard County issued a Memorandum and Order rejecting Pack Shack's challenge to the constitutionality of the ordinance and entering an injunction ordering Pack Shack to comply with the zoning ordinance. The Court of Special Appeals affirmed the trial court's decision. *Pack Shack v. Howard County*, 138 Md.App. 59, 770 A.2d 1028 (2001). Pack Shack then petitioned this Court for a writ of certiorari, which we granted. *Pack Shack v. Howard County*, 365 Md. 266, 778 A.2d 382 (2001).

### III.

We shall hold that, under the United States Supreme Court's decisions, the Howard County zoning ordinance should be regarded as a content neutral regulation subject to "intermediate scrutiny." Nonetheless, the ordinance imposes excessive burdens in its requirements for a license application beyond those necessary to further the stated purpose. In addition, the County cannot demonstrate that the location and distance restrictions leave open adequate alternative avenues for communication. The ordinance therefore violates the guarantee of free speech under Article 40 of the Maryland Declaration of Rights and the First Amendment to the United States Constitution.[3]

---

2. Pack Shack is located approximately 165 feet from a residential area, measured by a straight line.

3. This Court has often "treated Art. 40 [of the Maryland Declaration of Rights] as being *in pari materia* with the First Amendment" and has

## A.

The United States Supreme Court has addressed the issues raised in the instant case several times, including *Young v. American Mini Theatres, Inc.,* 427 U.S. 50, 96 S.Ct. 2440, 49 L.Ed.2d 310 (1976) (plurality opinion); *Renton v. Playtime Theatres,* 475 U.S. 41, 106 S.Ct. 925, 89 L.Ed.2d 29 (1986); *FW/PBS, Inc. v. City of Dallas,* 493 U.S. 215, 110 S.Ct. 596, 107 L.Ed.2d 603 (1990) (plurality opinion); and most recently in *City of Los Angeles v. Alameda Books,* 535 U.S. 425, 122 S.Ct. 1728, 152 L.Ed.2d 670 (2002).

In *Young v. American Mini Theatres, Inc., supra,* 427 U.S. 50, 96 S.Ct. 2440, 49 L.Ed.2d 310, the United States Supreme Court upheld an ordinance enacted by the City of Detroit that imposed location and distance restrictions on adult businesses and required adult theaters to obtain an "adult license" prior to showing sexually explicit films, even though five members of the Supreme Court could not agree on a single rationale. The plurality opinion stated that "[t]he mere fact that the commercial exploitation of material protected by the First Amendment is subject to zoning and other licensing requirements is not a sufficient reason for invalidating these ordinances." *Young v. American Mini Theatres, Inc.,* 427 U.S. at 62, 96 S.Ct. at 2448, 49 L.Ed.2d at 321. After pointing out that the zoning laws required all motion pictures to be exhibited in licensed theaters, the opinion focused on the location restrictions imposed only on adult theaters. The plurality

---

stated that the "legal effect of" both provisions "is substantially the same," *Sigma Delta Chi v. Speaker,* 270 Md. 1, 4, 310 A.2d 156, 158 (1973). *See DiPino v. Davis,* 354 Md. 18, 43–44, 729 A.2d 354, 367–368 (1999). "Nevertheless, we have also emphasized that, simply because a Maryland constitutional provision is *in pari materia* with a federal one . . . does *not* mean that the provision will *always* be interpreted or applied in the same manner as its federal counterpart." *Dua v. Comcast Cable,* 370 Md. 604, 621, 805 A.2d 1061, 1071 (2002). *See also DiPino v. Davis, supra,* 354 Md. at 43, 729 A.2d at 367 ("[I]n certain contexts the contours of the State Constitutional rights are not precisely those of the Federal"). In light of the facts and arguments in the case at bar, however, we shall regard the claimed violation of Article 40 and the claimed violation of the First Amendment as a single issue.

believed that the City had a sufficient interest in regulating the use of property. Even though "the ordinances treat[ed] adult theaters differently from other theaters" based on the content of the material, because the ordinance did not ban adult theaters entirely, but merely confined them to certain zones, the plurality opinion held that "the regulation of the place where such films may be exhibited does not offend the First Amendment."[4] *Young v. American Mini Theatres, Inc.,* 427 U.S. at 63, 96 S.Ct. at 2448–2449, 49 L.Ed.2d at 321–322.

The Supreme Court revisited the location restriction issue in *Renton v. Playtime Theatres, supra,* 475 U.S. 41, 106 S.Ct. 925, 89 L.Ed.2d 29. The City of Renton had enacted a zoning ordinance that prohibited adult movie theaters from locating within 1000 feet of any residential zone, family dwelling, church, park or school. Playtime Theaters challenged the ordinance, alleging that it violated the First and Fourteenth Amendments. The Supreme Court upheld the constitutionality of the ordinance, relying on *Young v. American Mini Theatres, Inc., supra,* 427 U.S. 50, 96 S.Ct. 2440, 49 L.Ed.2d 310, and *United States v. O'Brien,* 391 U.S. 367, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968), in its analysis of the ordinance as a "time, place, and manner regulation" meriting intermediate scrutiny. *Renton v. Playtime Theatres, supra,* 475 U.S. at 46, 106 S.Ct. at 928, 89 L.Ed.2d at 37. Earlier, in *United States v. O'Brien, supra,* 391 U.S. at 377, 88 S.Ct. at 1679, 20 L.Ed.2d at 680, the Supreme Court had held that

"a government regulation is sufficiently justified if it is within the constitutional power of the Government; if it furthers an important or substantial governmental interest; if the governmental interest is unrelated to the suppression of free expression; and if the incidental restriction on

---

4. Justice Stevens, writing for the plurality, pointed out that "[t]he situation would be quite different if the ordinance had the effect of suppressing, or greatly restricting access to, lawful speech." *Young v. American Mini Theatres, Inc.,* 427 U.S. at 71 n. 35, 96 S.Ct. at 2453 n. 35, 49 L.Ed.2d at 327 n. 35.

alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest."

The Court in *Renton v. Playtime Theatres* stated that such regulations "are acceptable so long as they are designed to serve a substantial governmental interest and do not unreasonably limit alternative avenues of communication," and provided that the government interest is independent of First Amendment concerns. *Renton v. Playtime Theatres, supra,* 475 U.S. at 47, 106 S.Ct. at 928, 89 L.Ed.2d at 37. As this Court has previously stated, "[t]he standard for adjudicating content-neutral time, place, or manner restrictions is that they are valid 'provided that ... they are narrowly tailored to serve a significant governmental interest, and that they leave open ample alternative channels for communication,'" *State v. Sheldon,* 332 Md. 45, 54, 629 A.2d 753, 758 (1993), quoting *Clark v. Community for Creative Non–Violence,* 468 U.S. 288, 293, 104 S.Ct. 3065, 3069, 82 L.Ed.2d 221, 227 (1984).

The Supreme Court has, however, invalidated some ordinances aimed at adult entertainment businesses. In *FW/PBS, Inc. v. City of Dallas, supra,* 493 U.S. 215, 110 S.Ct. 596, 107 L.Ed.2d 603, the Court reviewed provisions in the City Code of Dallas, regulating sexually oriented businesses through a combination of zoning, licensing and inspection requirements. The Dallas ordinance required the chief of police to approve the issuance of a license within thirty days of receipt of the application. It conditioned, however, the issuance of the permit upon approval by other municipal inspection agencies, such as the health department and the fire department. The ordinance set no time limits for the inspection, and according to the plurality, the "regulatory scheme allow[ed] indefinite postponement of the issuance of a license." *FW/PBS, Inc. v. City of Dallas, supra,* 493 U.S. at 227, 110 S.Ct. at 606, 107 L.Ed.2d at 619. Moreover, according to the plurality, the Dallas scheme failed to "provide an avenue for prompt judicial review so as to minimize suppression of the speech in the event of a license denial." *FW/PBS, Inc. v. City of Dallas, supra,* 493 U.S. at 229, 110 S.Ct. at 606, 107 L.Ed.2d at 620. Thus, the licensing scheme was invalid because it failed to

provide adequate procedural safeguards under principles earlier set forth in *Freedman v. Maryland,* 380 U.S. 51, 85 S.Ct. 734, 13 L.Ed.2d 649 (1965).[5]

Similarly, the Supreme Court invalidated a license scheme as an unconstitutional prior restraint in *Southeastern Promotions, Ltd. v. Conrad,* 420 U.S. 546, 95 S.Ct. 1239, 43 L.Ed.2d 448 (1975). A theater company challenged the denial of use of a municipal facility for the showing of a production of "Hair." The officials based the denial on a determination that the "production would not be in the best interest of community." *Southeastern Promotions, Ltd. v. Conrad, supra,* 420 U.S. at 548, 95 S.Ct. at 1241, 43 L.Ed.2d at 453 (internal quotations omitted). The Court struck down the scheme, pointing to various procedural shortcomings, including lack of provision for prompt judicial review. *Southeastern Promotions, Ltd. v. Conrad, supra,* 420 U.S. at 561, 95 S.Ct. at 1248, 43 L.Ed.2d at 461.

Therefore, to survive constitutional scrutiny, a regulation must serve a purpose that is independent of suppression of speech, must be designed to minimize the incidental burden on speech, and must leave open adequate alternative channels of communication. Furthermore, if the regulatory scheme includes a permit provision, it must contain procedural safeguards, so as not to be an unconstitutional prior restraint on speech.

### B.

As a threshold matter, we must determine whether the Howard County ordinance meets the requirements to qualify

---

**5.** The plurality concluded that the First Amendment did not require that "the city bear the burden of going to court to effect the denial of a license application or that it bear the burden of proof once in court," which is the third procedural safeguard outlined in *Freedman v. Maryland. FW/PBS Inc. v. City of Dallas, supra,* 493 U.S. at 230, 110 S.Ct. at 607, 107 L.Ed.2d at 621. Three other justices, in a concurring opinion, stated that the Court's previous decisions "mandate[d the] application of all three of the procedural safeguards specified in *Freedman v. Maryland." FW/PBS, Inc. v. City of Dallas, supra,* 493 U.S. at 239, 110 S.Ct. at 611, 107 L.Ed.2d at 626–627 (Brennan, J., concurring).

as a content neutral "time, place and manner" restriction. Pack Shack claims that the predominant intent of the ordinance is to suppress speech and that, therefore, it should not be treated as a content neutral "time, place and manner" restriction. Pack Shack cites, as evidence of this illicit motive, certain statements by the County Council member who co-sponsored the Bill, including the following:

"I said it before and I will say it again, 'if it were up to me, I would permanently ban adult and pornographic materials from the county.' The fact is, I cannot legally do this, therefore [this Bill] is one of the suggestions to limit it."

On the other hand, the County points out that the expressly stated purpose of the ordinance is to (§ 128.H.1 of the Zoning Regulations of Howard County)

"allow suitable locations for adult entertainment uses while limiting their adverse secondary impacts on the community. Studies from other jurisdictions in the United States have demonstrated that adult entertainment uses, particularly when clustered in a particular area, are associated with increased crime levels, depreciation of property values.... To lessen and control these impacts, to limit exposure to adult entertainment uses by children, and to control the spread of sexually transmitted diseases, these requirements require dispersal of adult entertainment uses and place certain other restrictions on their location and arrangement."

That is, the purpose of the ordinance is to limit the secondary effects associated with adult businesses.

■■ The record in this case indicates that, at least, one of the purposes of the ordinance was to limit the adverse effects of adult entertainment businesses. The record includes a Technical Staff Report by the Howard County Department of Planning and Zoning which examined the current regulations for adult business in neighboring counties and which contained the Technical Staff's recommendations. The addendum to this Report was a summary of studies from other jurisdictions on the secondary effects of adult entertainment businesses. As

the United States Supreme Court recently said, "a municipality may rely on any evidence that is 'reasonably believed to be relevant' for demonstrating a connection between speech and a substantial, independent government interest." *City of Los Angeles v. Alameda Books, supra,* 535 U.S. at 438, 122 S.Ct. at 1736, 152 L.Ed.2d at 683, quoting *Renton v. Playtime Theatres, supra,* 475 U.S. at 51, 106 S.Ct. at 931, 89 L.Ed.2d at 40. There is no requirement that the jurisdiction conduct an independent study, or that there actually be adverse effects from existing businesses before the jurisdiction can act. The record seems adequate to establish that there was an "independent government interest" in regulating adult businesses.

Furthermore, the United States Supreme Court has repeatedly held that combating the adverse secondary effects that flow from adult businesses is a significant government interest. *See, e.g., City of Los Angeles v. Alameda Books, supra,* 535 U.S. 425, 122 S.Ct. 1728, 152 L.Ed.2d 670; *Renton v. Playtime Theatres, supra,* 475 U.S. 41, 106 S.Ct. 925, 89 L.Ed.2d 29; *Young v. American Mini Theatres, Inc., supra,* 427 U.S. 50, 96 S.Ct. 2440, 49 L.Ed.2d 310. *See also Erie v. Pap's A.M.,* 529 U.S. 277, 120 S.Ct. 1382, 146 L.Ed.2d 265 (2000) (ban on nude dancing did not violate the First Amendment because prevention of public nudity was a sufficient government interest, and the law was therefore content-neutral); *Barnes v. Glen Theatre, Inc.,* 501 U.S. 560, 111 S.Ct. 2456, 115 L.Ed.2d 504 (1991) (same).

 Even if one Council member's motive was, as he stated, "to shut [Pack Shack] down," a single legislator's motive is not sufficient to invalidate the ordinance. *See, e.g., Ambassador Books & Video v. City of Little Rock,* 20 F.3d 858 (8th Cir.), *cert. denied,* 513 U.S. 867,513 U.S. 867, 115 S.Ct. 186, 130 L.Ed.2d 120 (1994) (upholding a zoning ordinance regulating adult oriented businesses, where a legislator had expressed a desire to shut down such businesses, but then worked with the zoning authority to formulate an appropriate regulation). In any case, "[w]hat motivates one legislator ... is not necessarily what motivates ... others to enact it, and

the stakes are sufficiently high for us to eschew guesswork." *United States v. O'Brien, supra,* 391 U.S. at 384, 88 S.Ct. at 1683, 20 L.Ed.2d at 684. Moreover, generally courts adhere to the " 'familiar principle of constitutional law that [a] Court will not strike down an otherwise constitutional statute on the basis of an alleged illicit legislative motive.' " *Renton v. Playtime Theatres, supra,* 475 U.S. at 48, 106 S.Ct. at 929, 89 L.Ed.2d at 38, quoting *United States v. O'Brien, supra,* 391 U.S. at 383, 88 S.Ct. at 1682, 20 L.Ed.2d at 683.

Therefore, under the Supreme Court's decisions, the ordinance is properly to be treated as a content neutral "time, place, and manner regulation." *Renton v. Playtime Theatres, supra,* 475 U.S. at 46, 106 S.Ct. at 928, 89 L.Ed.2d at 37. Nevertheless, to pass constitutional muster, the ordinance must be designed so as to minimize the incidental burden on protected speech and leave open adequate alternative avenues for communication. As explained below, the Howard County ordinance fails on both of these counts.

### C.

█ Following the decision in *Renton v. Playtime Theatres,* the United States Supreme Court has made it clear that a content neutral time, place, and manner restriction such as the Howard County ordinance must be analyzed as a prior restraint if it requires governmental permission to engage in protected speech. *FW/PBS, Inc. v. City of Dallas, supra,* 493 U.S. at 225–226, 110 S.Ct. at 604–605, 107 L.Ed.2d at 618. The Howard County ordinance requires that an adult business seek a permit, which is renewed yearly, to continue operating in the County.

█ Pack Shack challenges the license requirement as an unconstitutional prior restraint on protected speech. A licensing scheme, however, even if it acts as a prior restraint, is not *per se* unconstitutional. *Southeastern Promotions, Ltd. v. Conrad, supra,* 420 U.S. at 558, 95 S.Ct. at 1246, 43 L.Ed.2d at 459. The Supreme Court pointed out in *FW/PBS, Inc. v. City of Dallas,* that its past holdings recognize at least two features

that would render a system an unlawful prior restraint. 493 U.S. at 225, 110 S.Ct. at 604–605, 107 L.Ed.2d at 618. First, where the system places "unbridled discretion in the hands of a government official or agency." *City of Lakewood v. Plain Dealer Publishing Co.,* 486 U.S. 750, 757, 108 S.Ct. 2138, 2144, 100 L.Ed.2d 771, 782 (1988). Second, where the prior restraint fails to place limits on the time within which the decision maker must render a decision with respect to the license application. *See Freedman v. Maryland, supra,* 380 U.S. at 59, 85 S.Ct. at 739, 13 L.Ed.2d at 655. Thus, "a system of prior restraint 'avoids constitutional infirmity only if it takes place under procedural safeguards designed to obviate the dangers of a censorship system.' " *Southeastern Promotions, Ltd. v. Conrad, supra,* 420 U.S. at 559, 95 S.Ct. at 1247, 43 L.Ed.2d at 459–460, quoting *Freedman v. Maryland, supra,* 380 U.S. at 58, 85 S.Ct. at 739, 13 L.Ed.2d at 654.

In *Freedman,* the Supreme Court listed three essential procedural safeguards. First, any restraint prior to judicial review can be placed only for a brief period during which the status must be maintained. Second, expeditious judicial review of the administrative decision must be available. Lastly, the censor must bear the burden of going to court to suppress the speech and must bear the burden of proof in court. *Freedman v. Maryland, supra,* 380 U.S. at 58–60, 85 S.Ct. at 738–739, 13 L.Ed.2d at 654–655.[6]

The County argues that the licensing scheme is not an invalid prior restraint. An adult business can begin, or continue operation, as in the case of Pack Shack, while its application for a permit is pending. The regulation also provides that "[i]f the applicant appeals the Director's [of Planning and Zoning] denial of the permit, the business may continue to operate pending the outcome of the appeal." § 128.H.6(c) of

---

6. Following the plurality decision of *FW/PBS, Inc. v. City of Dallas,* the applicability of the third *Freedman* factor to a licensing scheme such as the one in the present case is unclear. *See, e.g., 11126 Baltimore Boulevard, Inc., v. Prince George's County,* 58 F.3d 988, 996 n. 12 (4th Cir.1995), *cert. denied,* 516 U.S. 1010, 116 S.Ct. 567, 133 L.Ed.2d 492 (1995).

the Zoning Regulations of Howard County. The appeal is to the Howard County Board of Appeals. § 130 of the Zoning Regulations of Howard County. An applicant may seek judicial review of an unfavorable ruling by the Board of Appeals in the Circuit Court for Howard County, and the applicant may appeal an adverse circuit court decision to the Court of Special Appeals.[7] § 130. D of the Zoning Regulations of Howard County. There are adequate provisions for judicial review.

Additionally, the ordinance provides that (§ 128.H.6 (b) of the Zoning Regulations of Howard County)

> "[t]he Director of Planning and Zoning shall act on the permit application within 30 days of receipt of the application by the Department of Planning and Zoning. The permit shall be approved if the use complies with [the conditions] of this section."

Thus, the County contends, the official has no administrative discretion and must approve the application if it complies with all the stated requirements. Nonetheless, there is considerable room for exercise of judgment by the official when determining whether the application does in fact satisfy all the

---

**7.** Section 130 of the Zoning Regulation of Howard County states, in pertinent part:

"D. **Court Review**
1. Any person ... aggrieved by any decision of the Board of Appeals, may appeal to the Circuit Court for Howard County by petition....
2. Appeals to the Circuit Court shall be filed within 30 days from the day upon which the Board decides the matter from which the appeal is taken.
3. The Court shall grant the Board of Appeals ... a reasonable time to answer and shall require ... the entire record before the Board, to be filed with the Board's answer.

* * *

7. An appeal may be taken from the determination of the Circuit Court to the Court of Special Appeals of Maryland."

*See also* Maryland Code (1957, 2001 Repl.Vol., 2002 Supp.), Art. 25A, § 5(U).

No issue concerning the invocation and exhaustion of administrative remedies is presented in this case. *See, e.g., Felder v. Casey,* 487 U.S. 131, 146–147, 108 S.Ct. 2302, 2311, 101 L.Ed.2d 123, 143–144 (1988); *Patsy v. Florida Board of Regents,* 457 U.S. 496, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982); *Montgomery County v. Broadcast Equities, Inc.,* 360 Md. 438, 449, 758 A.2d 995, 1000–1001 (2000).

intricate requirements listed. For instance, while considering whether the distance requirements are met, the official has the option of using alternative measurements. Distance could measured, for example, door-to-door, or boundary line to boundary line. The choice of method could determine whether the permit is granted or not. Similarly, as we discuss below, the definition of parties with a "financial interest" in the business could be subject to interpretation. One interpretation of "financial interest" could be ownership interest; alternatively, the term could be interpreted to include parties such as lien-holders, creditors, etc.

 In any case, a licensing ordinance may formally meet the two *Freedman* requirements considered in *FW/PBS, Inc. v. City of Dallas, supra,* and still operate as an unlawful prior restraint on freedom of expression if it unreasonably encumbers the permit process. *See Freedman v. Maryland, supra,* 380 U.S. 51, 85 S.Ct. 734, 13 L.Ed.2d 649. In addition to any infirmity in the specific procedural provisions above, the extraordinarily extensive disclosure requirements that are required in the permit application impose an unjustifiably heavy burden on an applicant. Specifically, the ordinance requires the following (emphasis added):

> "The permit application shall also include the name and address of *each owner of the business and each owner of the property on which the business is located.* If the owner of the business is not a natural person, the application shall list the *names and addresses of all natural persons who have a financial interest in the business* and all natural persons who are authorized to act for the owner of the business. In addition, if the owner of the property on which the business is located is not a natural person, *the application shall list the names and addresses of all natural persons who have a financial interest in the property* and all natural persons who are authorized to act for the owner of the property."

Thus, an applicant has to list every person who has a financial interest not only in the adult business, but also every person with such an interest in the real property where the business is located, in the application. Otherwise the application cannot

be considered. Moreover, the ordinance fails to define when a party has a "financial interest" so as to require inclusion in the application. In the absence of a clear definition of the term, determining who is a party with a "financial interest" and must be included in the application becomes an exercise in discretion for the official reviewing the permit application.

For a corporation, natural persons with a "financial interest" could include every single stockholder, regardless of how small the ownership interest is. As previously mentioned, it could possibly include other parties that could conceivably be held to have a financial interest in the business, such as long term creditors and lien-holders. For example, if an entity extends a long term line of credit to the business, it could arguably have a financial interest in the business and must be included. If the creditor entity is a corporation the requirement could be interpreted to mean disclosure of all persons with an ownership interest in the creditor entity. The ordinance provides no definition of a person with a "financial interest" and no limits on the discretion of the official charged with determining who qualifies as having a "financial interest" in the business.

Furthermore, the applicant is also required to list every "natural person" who has a "financial interest" in the real property where the adult business is located. If the business is renting the property from a corporation, this would seem to require, at the minimum, listing every stockholder of the landlord corporation. If there is a mortgage on the property, the term "financial interest" could be interpreted to include information about the mortgagee. If the mortgagee is a corporation, the applicant could, in theory, be required to obtain and disclose extensive information about the mortgagee corporation. Where the line is to be drawn could very well depend on the judgment of the administrative official reviewing the application. Apart from the problematic potential for the exercise of discretion by the official, this extensive disclosure requirement is an onerous and unnecessary burden on the permit process.

██ Not only does this requirement impose an onerous burden on the applicant, "compelled disclosure, in itself, can seriously infringe on [rights] guaranteed by the First Amendment." *Buckley v. Valeo,* 424 U.S. 1, 64, 96 S.Ct. 612, 656, 46 L.Ed.2d 659, 713 (1976). *See also Talley v. California,* 362 U.S. 60, 80 S.Ct. 536, 4 L.Ed.2d 559 (1960); *NAACP v. Alabama,* 357 U.S. 449, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958). Such disclosure can have a "chilling effect" on protected speech. The Supreme Court has said (*Buckley v. Valeo, supra,* 424 U.S. at 64, 96 S.Ct. at 656, 46 L.Ed.2d at 713, footnotes omitted):

> "We long have recognized that significant encroachments on First Amendment rights of the sort that compelled disclosure imposes cannot be justified by a mere showing of some legitimate governmental interest. Since *NAACP v. Alabama* we have required that the subordinating interests of the State must survive exacting scrutiny. We also have insisted that there be a 'relevant correlation' or 'substantial relation' between the governmental interest and the information required to be disclosed."

The United States Court of Appeals for the Seventh Circuit struck down a zoning ordinance in *Genusa v. City of Peoria,* 619 F.2d 1203 (7th Cir.1980), with disclosure provisions very similar to those in the instant case. The purpose of the ordinance was to limit the "deleterious effect" of adult businesses on "adjacent areas." *Id.* at 1209. The ordinance required adult bookstores to obtain a license; the license application listed several disclosure provisions, including "[t]he names and addresses of all persons holding any beneficial interest in the real estate upon which [the] adult use [was] to be operated." *Id.* at 1216. The ordinance also required extensive information about "any . . . person who is interested directly in the ownership or operation of the [adult] business." *Ibid.* The Seventh Circuit struck down these provisions as having "nothing to do with the scatter zoning purpose of the ordinance and [could not] be supported by reference to that purpose." *Id.* at 1219.

Other courts have invalidated ordinances with disclosure requirements that were far more modest than the one in the instant case. In *Lady J. Lingerie, Inc. v. City of Jacksonville,* 176 F.3d 1358 (11th Cir.1999), *cert. denied,* 529 U.S. 1053, 120 S.Ct. 1554, 146 L.Ed.2d 459 (2000), the court held unconstitutional a zoning ordinance regulating adult entertainment businesses, which required corporate applicants for adult business licenses "to disclose the names of 'principal stockholders,'" and defined as a principal stockholder anyone who owned at least ten per cent of the stock of a corporation. *Lady J. Lingerie, Inc. v. City of Jacksonville, supra,* 176 F.3d at 1366. The court pointed out that "[c]ompelled disclosure of the sort the Jacksonville ordinance entails threaten[ed] to stymie the exercise of First Amendment freedoms...." *Ibid.* The court held that there was no "'relevant correlation' or a 'substantial relation' between the names of principal stockholders and the harmful secondary effects of adult entertainment establishments." *Ibid.* The court indicated that disclosure of directors and officers of the corporation would be sufficient for the City's need to know who was actually running the adult businesses, to allow for effective enforcement of the zoning regulations.

Similarly, the United States Court of Appeals for the Ninth Circuit held unconstitutional a regulation by the city of Seattle that required a license application for a specific adult business to list the names and addresses of all stockholders of a corporate applicant. *Acorn Investments, Inc. v. City of Seattle,* 887 F.2d 219 (9th Cir.1989). The City justified the licensing ordinance on the grounds of the adverse secondary effects associated with the adult businesses in question, relying on *Renton v. Playtime Theatres, supra,* 475 U.S. 41, 106 S.Ct. 925, 89 L.Ed.2d 29. Furthermore, the City argued that requiring corporate applicants "to disclose the names and addresses of their shareholders [was] intended to gain accountability, in the least intrusive manner, from the actual owners and those responsible for the control of [the adult] business." *Acorn Investments, Inc. v. City of Seattle, supra,* 887 F.2d at 225–226 (internal quotation marks omitted). The

court, applying the *Renton* test, rejected this argument, saying: "Because officers and directors, not shareholders, are legally responsible for the management of a corporation's business, we fail to see how the City's interest in accountability is served by notifying shareholders" about specific details concerning the adult business. *Id.* at 226. The court held that there was "no logical connection between the City's legitimate interest in compliance with the ... ordinance and the rule requiring disclosure of the names of shareholders." *Ibid.*

Similar cases invalidating ordinances like Howard County's include, *e.g.*, *Pleasureland Museum, Inc., v. Beutter,* 288 F.3d 988 (7th Cir.2002) (striking down provisions regulating sexually-oriented businesses which required the business and its employees to submit, *inter alia,* Social Security numbers, driver's license information and photographs, as unnecessary for the City's stated purposes); *Schultz v. City of Cumberland,* 228 F.3d 831, 852 (7th Cir.2000) (invalidating provisions aimed at adult businesses which required the "production of a residential address, recent color photograph, Social Security number, fingerprints, tax-identification number and driver's license information" on the grounds that the "information [was] redundant and unnecessary for Cumberland's stated purposes" and that "[i]ts required disclosure serve[d] 'no purpose other than harassment,' ... [and] because it is not narrowly tailored to the government's interests in the time, place or manner of adult entertainment"); *East Brooks Books v. City of Memphis,* 48 F.3d 220 (6th Cir.), *cert. denied,* 516 U.S. 909, 116 S.Ct. 277, 133 L.Ed.2d 198 (1995) (permit provision which required the signature of each person with an ownership interest, no matter how small, on the application in an ordinance which required licensing of sexually oriented businesses was invalid as impermissibly broad); *T.K.'s Video v. Denton County,* 830 F.Supp. 335 (E.D.Tex.1993), *aff'd in part, vacated in part,* 24 F.3d 705 (5th Cir.1994) (invalidating as unconstitutional provisions in a zoning regulation which required all stockholders, limited partners, equity holders, real property owners as well as lien holders and their employees

associated with adult businesses to be licensed, and holding that the provisions were vague, overbroad and not narrowly tailored to serve a substantial government interest).

In the present case, there is little or no relationship between the alleged government interest of combating the adverse secondary effects of adult businesses and the extensive disclosure of all parties with a "financial interest," no matter how minimal, not merely in the adult business, but also in the real property where the business is located. Information about a corporation's agent, and its directors and officers, would more than adequately serve the County's legitimate interest in knowing who actually runs the adult business. There is no "relevant correlation" between information about every person with a financial interest in the business and the County's alleged purpose of dispersing adult businesses to limit the associated adverse secondary impacts of such businesses.[8]

The correlation between the ostensible purpose of the ordinance and information about persons with a "financial interest" in the real property is even more tenuous. The disclosure requirements in the license application, in their current form, are not necessary to achieve the County's legitimate interest in combating the adverse impacts of adult businesses. They seem to serve no purpose other than to encumber the permit process, and make it more difficult to obtain a license for an adult business. As such, the ordinance in its present form fails to minimize the incidental burden on protected speech, and is unconstitutional.

---

8. Howard County does not require such extensive disclosure of financial interest by any other business, even massage establishments, where there are similar concerns. The County requires information about directors and officers for publicly traded corporations applying for a massage establishment license, and requires shareholder information only if the corporation is not publicly traded. Howard County Code § 14.808. The application, under § 14.808, does not require information about other persons with a financial interest or information about the property owners, or persons with a financial interest in the property.

## D.

As a "time, place, and manner" restriction, the ordinance must leave open adequate alternative channels of communication, so as to allow adult oriented businesses "a reasonable opportunity" to operate within the county. *Renton v. Playtime Theatres,* 475 U.S. at 54, 106 S.Ct. at 932, 89 L.Ed.2d at 42. There is no precise standard as to what constitutes "a reasonable opportunity." *Ibid.* "Because there is no single dispositive evaluative consideration, an analysis should encompass a variety of factors...." *D.H.L. Associates v. O'Gorman,* 199 F.3d 50, 60 (1st Cir.1999), *cert. denied,* 529 U.S. 1110, 120 S.Ct. 1965, 146 L.Ed.2d 796 (2000).

In general, ordinances that leave open alternative sites that exceed the number of businesses, or leave available a significant area of the jurisdiction to adult businesses, have been upheld. In *Renton,* where the Supreme Court upheld the ordinance, over five per cent of the city's land was left open for adult businesses. Similarly, in *Young v. American Mini Theatres, Inc., supra,* the Supreme Court was satisfied with the trial court's finding that there were "myriad" locations available for new adult theaters, and because the ordinance did not apply to existing theaters, held that the burden on First Amendment rights was slight.

In *Woodall v. City of El Paso,* 49 F.3d 1120 (5th Cir.), *cert. denied,* 516 U.S. 988, 116 S.Ct. 516, 133 L.Ed.2d 425 (1995), the court held that there were adequate alternative avenues of communication, with a possible sixty-six sites available for adult businesses at a time when only twenty-two adult businesses were in operation, and the number of adult businesses had been declining over time. The United States Court of Appeals for the Eighth Circuit upheld an ordinance that imposed location restrictions on adult businesses, when a total of twenty-seven adult businesses were operating in the jurisdiction, a maximum of five would have to relocate, and there were 109 locations potentially available. *Ambassador Books & Video v. City of Little Rock, supra,* 20 F.3d 858. Similarly, in *International Eateries of America, Inc. v. Broward County,*

726 F.Supp. 1568 (S.D.Fla.1989), *aff'd,* 941 F.2d 1157 (11th Cir.1991), *cert. denied,* 503 U.S. 920, 112 S.Ct. 1294, 117 L.Ed.2d 517 (1992), the court found that the twenty-six potential sites available to adult businesses were adequate.

A New York court upheld a zoning ordinance regulating adult entertainment businesses based on evidence that approximately seven per cent of the City's total land area was available for relocation of such businesses, which was adequate to accommodate those businesses that were forced to relocate. *Stringfellow's of New York, Ltd. v. City of New York,* 91 N.Y.2d 382, 671 N.Y.S.2d 406, 694 N.E.2d 407, *aff'd, Hickerson v. City of New York,* 146 F.3d 99 (2d Cir.1998), *cert. denied,* 525 U.S. 1067, 119 S.Ct. 795, 142 L.Ed.2d 658 (1999). *See also Diamond v. City of Taft,* 215 F.3d 1052 (9th Cir. 2000), *cert. denied,* 531 U.S. 1072, 121 S.Ct. 763, 148 L.Ed.2d 665 (2001) (seven available sites were sufficient, when there was only one adult business in the town); *D.H.L. Associates v. O'Gorman, supra,* 199 F.3d 50 (five lots provided adequate options for two adult businesses in a small town); *Holmberg v. City of Ramsey,* 12 F.3d 140 (8th Cir.1993), *cert. denied,* 513 U.S. 810, 115 S.Ct. 59, 130 L.Ed.2d 17 (1994) (sexually oriented businesses had access to thirty-five percent of the City's land zoned for commercial purposes); *Lakeland Lounge v. City of Jackson,* 973 F.2d 1255 (5th Cir.1992), *cert. denied,* 507 U.S. 1030, 113 S.Ct. 1845, 123 L.Ed.2d 469–470 (1993) (eight to ten sites were sufficient for a total of six adult businesses).

Howard County argued in the Circuit Court that there are up to twenty-three sites that are in compliance with the location restrictions in the ordinance. Pack Shack contended that there could be as few as four sites that satisfy the ordinance restrictions. The County also argued that, even if there are only four sites, as the ordinance affects at most two businesses, and leaves available the four sites, it satisfies the *Renton* requirement that the ordinance leave open sufficient alternative locations. The Circuit Court stated as follows:

"There are only two existing adult entertainment businesses in Howard County that provide private booths for viewing rental material. Since the passage of the bill, no one has

ever applied for a permit, including the [Pack Shack] * * * After reviewing all of the relevant zoning regulations, maps and documents relied upon by the Howard County authorities, and after making a site inspection of each of the twenty-three sites identified by Howard County as potential sites for adult entertainment businesses, [the Plaintiff's expert] testified that at best there were twelve potential sites, but that realistically he thought only four were economically viable as potential sites."

The Circuit Court accepted Pack Shack's expert's testimony as "convincing," and found, as a fact, that "four to twelve potential sites" met the requirements of the ordinance.[9] Therefore, the Circuit Court held, the ordinance did not impose an "unreasonable restriction" on adult entertainment businesses.

The Circuit Court's conclusion seemed to be based on the assumption that the ordinance applied to the two adult businesses which "provide[d] private booths for viewing rental material." But the definition is far broader; the ordinance defines adult entertainment businesses as those that "offer[ ] for sale or rental any printed, recorded, . . . filmed or otherwise viewable material, or other paraphernalia, where a significant or substantial portion of the stock in trade is characterized by an emphasis on matters . . . relating to sexual activities," and enterprises that offer adult live entertainment as well as adult movie theaters. Moreover, the record shows, and the trial judge elsewhere found, that there were more than two businesses in the County that would be covered by the plain language of the ordinance. The trial judge referred to an affidavit from Pack Shack's investigator, who visited several stores located in Howard County that had adult movies and videos for sale and rent. One store had an inventory that consisted entirely of sexually themed material; five to twenty percent of the inventory at

---

9. These twelve sites include ones such as the Verizon headquarters and sites with long term, large scale commercial users. Howard County does not in this Court argue that the trial judge's findings were clearly erroneous.

three other stores consisted of similar material; a significant share of the inventory in the remaining stores consisted of such material. At the trial, Pack Shack argued that these businesses constituted adult entertainment businesses and should be added to the two businesses that were defined as such by stipulation. The Circuit Court excluded these businesses in determining the impact of the ordinance on the grounds that "no one has ever complained about any of these stores making adult videos available to the adult public. . . . "

The lack of public complaints about a business is irrelevant to determining its status under the ordinance. Under the ordinance's definition of adult entertainment businesses, and the record in this case, it is clear that the ordinance applies to more than two, and perhaps as many as eleven, businesses. The record does not indicate whether any of these establishments would have to relocate in order to comply with the ordinance. Accordingly, it is impossible to determine definitively whether there are adequate alternative avenues for communication. *See 754 Orange Ave., Inc. v. City of West Haven,* 761 F.2d 105 (2d Cir.1985) (striking down a zoning ordinance because the record made it impossible to determine whether it left open adequate alternative channels of communication).

Based on the record, if even three other businesses will have to relocate, then potentially, there are fewer sites available than businesses. In that case, the ordinance clearly would not leave open sufficient alternative avenues. *See Alexander v. City of Minneapolis,* 698 F.2d 936 (8th Cir.1983) (striking down an ordinance that would leave open twelve sites for eighteen businesses which would need to relocate).[10]

Another factor that courts have used in determining whether the ordinance leaves open sufficient channels of communica-

---

10. A later ordinance promulgated by the City of Minneapolis, which left open 6.6 percent of commercially zoned land accessible to adult theaters, was upheld in *Alexander v. City of Minneapolis,* 928 F.2d 278 (8th Cir.1991).

tion is the percentage of land allocable to adult oriented businesses. In *Walnut Properties, Inc. v. City of Whittier,* 861 F.2d 1102 (9th Cir.1988), *cert. denied,* 490 U.S. 1006, 109 S.Ct. 1641, 104 L.Ed.2d 157 (1989), an ordinance that left open 1.4 per cent of the city's land to adult businesses was held to be invalid. Ann Arbor's zoning ordinance, that left open 0.23 percent of the city's land area as lawful locations for adult entertainment businesses, was struck down in *Christy v. Ann Arbor,* 824 F.2d 489 (6th Cir.1987), *cert. denied,* 484 U.S. 1059, 108 S.Ct. 1013, 98 L.Ed.2d 978 (1988). A zoning scheme that effectively confined adult businesses to a single city block was held unconstitutional in *A.F.M. Ltd. v. City of Medford,* 428 Mass. 1020, 704 N.E.2d 184 (1999). *See also Basiardanes v. City of Galveston,* 682 F.2d 1203 (5th Cir.1982) (ordinance that left no available location in the central business district was unconstitutional); *University Books and Videos, Inc. v. Miami–Dade County,* 132 F.Supp.2d 1008 (S.D.Fla.2001) (zoning ordinance that limited adult oriented businesses to 0.92 percent of total developed land area, and would allow only one establishment for each 100,000 residents, and would permit survival of only twelve of the thirty-seven existing businesses, violated the First Amendment).

■ In support of its argument that the ordinance fails to provides adequate alternatives, Pack Shack states that less than three-one thousandths of one percent of Howard County's land area would be available for adult entertainment businesses under the ordinance. The County points out that ninety percent of the land in Howard County is zoned so as to be unavailable for any commercial enterprise. Even if this is true, the land available for adult businesses would be less than one-tenth of one percent of the ten percent available for commercial enterprises. This is far too small to satisfy the requirement, under *Renton v. Playtime Theatres,* that such regulation leave open adequate alternative channels of communication for protected speech and provide adult entertainment businesses "a reasonable opportunity" to operate within the County.

Therefore, we hold that the ordinance violates the First Amendment to the United States Constitution and Article 40 of the Maryland Declaration of Rights.

*JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED, AND CASE REMANDED TO THAT COURT WITH DIRECTIONS TO REVERSE THE JUDGMENT OF THE CIRCUIT COURT FOR HOWARD COUNTY AND TO REMAND THE CASE TO THE CIRCUIT COURT FOR THE ENTRY OF A JUDGMENT CONSISTENT WITH THIS OPINION. RESPONDENT TO PAY COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS.*

HARRELL, J., concurring in part and dissenting in part.

I agree that certain parts of § 128.H of the Zoning Regulations of Howard County exceed the bounds permitted by the Maryland and United States Constitutions, though not all of the parts found so by the majority opinion, and certainly not the entirety of § 128.h. Thus, I write separately to explain which specific portions of the zoning ordinance I believe to be unconstitutional. This is necessary because the Zoning Regulations of Howard County contain a severability provision,[11] so it is inappropriate in this case to declare § 128.H unconstitutional in sum.

---

**11.** "Whether a provision ... is severable from the remaining portions of the statute of which it is a part is a question of legislative intent." *Sugarloaf Citizens Assoc., Inc. v. Gudis*, 319 Md. 558, 573–74, 573 A.2d 1325, 1333 (1990). The County Council of Howard County has indicated its intent that these regulations be severable under the circumstances. *See* Zoning Regulations of Howard County, § 100.D ("Should any section or provision of these regulations ... be declared by the courts to be unconstitutional or invalid, such decision shall not affect the validity of the regulations ..., or any part thereof, other than the part declared to be unconstitutional or invalid."). Even without a severability clause, we ordinarily would consider the provisions to be severable, where reasonably possible to treat them so, because "there is a strong presumption that a legislative body generally intends its enactments to be severed if possible." 319 Md. at 574, 573 A.2d at 1333.

The majority presents three separate rationales for its general unconstitutionality result: (1) § 128.H invests too much discretion in Howard County officials; (2) the disclosure requirements of § 128.H "impose an onerous burden on the applicant," (Majority slip op. at 21); and (3) the "time, place and manner" location requirements establishing the minimum distances between adult entertainment businesses and between adult entertainment businesses and other buildings or uses are excessive. I respectfully disagree with the majority opinion on the discretion issue. Moreover, I conclude that Pack Shack failed to challenge adequately the disclosure regulations. Finally, I agree with the majority's analysis of the location requirements.

## I. Discretion of Local Officials

I do not see the "considerable room for exercise of judgment by the official" (Majority slip op. at 19) found by the majority as a result of the County's use of the words "distance" and "financial interest." According to the majority, all of § 128.H is unconstitutional because it provides no standard as to how its respective spatial distance requirements are to be measured. For example, the majority theorizes "[d]istance could [be] measured ... door-to-door, or boundary line to boundary line." *Id.* Section 128.H.2.f, which reads "[m]easurements shall be made in a straight line between the building containing the adult entertainment business and the building, zoning district, land use area, or lot," makes the standard more than clear enough.[12] The only arguable ambiguity seems to be as to where on the building, zoning district, land use area or lot to measure from or to, but in no case can the

---

12. Though the majority suggests that the distance could be measured from boundary line to boundary line, this can never be a proper measurement. According to § 128.H.2.f, the building containing the adult entertainment business must always be the starting point. In the case of another building (for example when measuring the distance to another adult entertainment business as described in § 128.H.2.a), the proper measurement is building to building. In the case of a zoning district, land use area, or lot (for example when measuring the distance to a residential zoning district as described in § 128.H.2.b), the proper

distance be less than the distance between the nearest point on the building containing the adult entertainment business and the nearest point on the adjacent building, zoning district, land use area or lot. This limited discretion is not "unbridled"—it is strictly confined to the physical distance between the relevant points.[13]

Neither the "ambiguity" of selecting what part of the building to use for measurement, nor the ambiguity created by the undefined term "financial interest" in § 128.H.6.a (requiring that the name of every person with a financial interest in the property or business be disclosed on the licensing application), is the kind that creates "unbridled discretion" as the U.S. Supreme Court uses that term. *See Lakewood v. Plain Dealer Publishing Co.,* 486 U.S. 750, 757, 108 S.Ct. 2138, 2144, 100 L.Ed.2d 771, 782 (1988) ("a licensing statute placing unbridled discretion in the hands of a government official or agency constitutes a prior restraint and may result in censorship"). When the Supreme Court has struck down a statute for giving too much discretion to local officials, that statute either has provided no standards at all, *see Lakewood,* or has called for a totally subjective judgment, *see Shuttlesworth v. Birmingham,* 394 U.S. 147, 149–150, 89 S.Ct. 935, 938, 22 L.Ed.2d 162, 166 (1969) ("The commission shall grant a written permit for such parade, procession or other public demonstration, ... unless in its judgment the public welfare, peace, safety, health, decency, good order, morals or convenience require that it be refused."). The hallmark of "unbridled discretion" is a subjective decision that is left to a government

---

measurement is from the building housing the adult entertainment business to the boundary line of the zoning district, land use area, or lot. Section 128.H.2.e makes a special exception for certain buildings. Under that section, the proper measurement is from a building containing the adult entertainment business to the "boundary of a parcel occupied by an academic school (nursery through high school level), child day care center, religious facility as the principal use, public library, public park, or public recreational facility[.]"

**13.** As made plain by the majority opinion elsewhere, however, with regard to the alternative argument as to the constitutionality of the particular spatial standards themselves, § 128.H.2 has other problems.

official and is not amenable to judicial review. That hallmark is not present in the ordinance in the present case.

Even were I to find that the two provisions selected by the majority grant an impermissible level of discretion to local officials, I would "save" the statute by adopting a narrowing construction. This Court could choose, where reasonable and possible to do so, a "constitutional" interpretation. For example, I would construe the proper measure of distance to be from the nearest point on the building containing the adult entertainment business to the nearest point on the relevant other building, zoning district, land use area or lot, and "financial interests" to mean ownership interests. Such constructions would eliminate the discretion that so concerns the majority. *See Posadas de Puerto Rico Assocs. v. Tourism Co.*, 478 U.S. 328, 347–48, 106 S.Ct. 2968, 2980, 92 L.Ed.2d 266, 285 (1986) ("with respect to the bare statutory language ... we are bound by the Superior Court's narrowing construction of the statute. Viewed in light of that construction ... we do not find the statute unconstitutionally vague"). Imposing a "constitutional" construction through judicial gloss is preferable, in my view, to the drastic measure of declaring unconstitutional an entire legislative enactment.

## II. Disclosure

Were it properly before us and not salvageable through judicial construction of the term "financial interests," I would tend to agree with the majority that, with respect to the disclosure requirements of the licensing scheme, § 128.H.6.a, "there is little or no relationship between the alleged government interest of combating the adverse secondary effects of adult businesses and the extensive disclosure of all parties with a 'financial interest,'" (Majority op. 377 Md. at 79, 832 A.2d at 184). I do not join the majority, however, for the additional reason that Petitioner did not raise this issue in the trial court or on appeal.[14] Consequently, neither the trial court nor the Court of Special Appeals addressed this issue.

---

14. The majority opinion gives extensive attention in its analysis to the disclosure requirements of the Howard County ordinance. (Majority

### III. Location

I agree with the majority that certain of the spatial location or separation requirements of § 128.H.2 violate the First Amendment to the United States Constitution and Article 40 of the Maryland Declaration of Rights. The trial court found that there were between four and twelve potential sites in Howard County that fit the requirements of § 128.H.2. Pack Shack argues that if each site were an acre in size, this would amount to between .00249 and .00747 percent of the County's total acreage. A set of locations comprising less than one hundredth of one percent of the total area of the County and less than one tenth of one percent of the area open to regular bookstores and other commercial enterprises, (*see* Majority

---

op. 377 Md. at 74–79, 832 A.2d at 181–84). Yet, Pack Shack, in its brief and reply brief to this Court, barely mentions the disclosure requirements as a basis for its arguments. The only mention in either brief appears in Pack Shack's initial brief (at 28) where, in passing, it states:

> Using a cumulative approach, the ordinance restrictions are greater than essential to the furtherance of the government interest. It has imposed buffers from protected uses, restrictions to particular commercial zones, a 2,500–foot separator between adult businesses, operational restrictions and *a licensing scheme with disclosure requirements not imposed on other book and video stores in the County.* (emphasis added)

Pack Shack thereafter advances authorities purporting to support its argument as to the spatial, locational, and operational restrictions, but not once endeavors to particularize or support its mere passing mention of the disclosure requirements. Failure to discuss or specifically argue an issue in briefs or oral argument, or to set forth the authority for a proposition, properly is viewed as a waiver of that issue. *See Foster v. State,* 305 Md. 306, 315, 503 A.2d 1326, 1331 (1986) (citing *Health Serv. Cost Rev. Comm. v. Lutheran Hosp.,* 298 Md. 651, 664, 472 A.2d 55, 61 (1984); *Logan v. Town of Somerset,* 271 Md. 42, 67, 314 A.2d 436 449–450 (1974); *Ricker v. Abrams,* 263 Md. 509, 516, 283 A.2d 583, 587 (1971); *Wooddy v. Wooddy,* 256 Md. 440, 450–451, 261 A.2d 486, 491 (1970); *Harmon v. State Roads Comm.,* 242 Md. 24, 30–32, 217 A.2d 513, 516–518 (1966)).

The clearest statement of this issue is located in the Amicus brief filed by Free Speech Coalition of the District of Columbia, Maryland and Virginia. Ordinarily, this Court will not decide an issue "unless it plainly appears by the record to have been raised in or decided by the trial court." Maryland Rule 8–131(a). The rationale behind the normal effect of this rule particularly should be vindicated here where an issue is presented only by an amicus.

op. 377 Md. at 83–84, 832 A.2d at 187–88), is neither "a reasonable opportunity to open and operate" an adult entertainment business within Howard County, *Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 54, 106 S.Ct. 925, 932, 89 L.Ed.2d 29, 42 (1986), nor does it allow "alternative avenues of communication" to persist. 475 U.S. at 47, 106 S.Ct. at 928, 89 L.Ed.2d at 37.

As noted *supra* at n. 1, "there is a strong presumption that a legislative body generally intends its enactments to be severed if possible." *Gudis,* 319 Md. at 574, 573 A.2d at 1333. While § 128.H.2 may be severed from the rest of § 128.H, it is impossible to sever particular clauses of § 128.H.2 from each other. Legislative intent is our touchstone on severability questions, *Id.* at 573–574, 573 A.2d at 1333, but the § 128.H.2 spatial location regulations function as a coordinated whole. Therefore, I would find that § 128.H.2 is invalid in its entirety, and leave the rest of § 128.H intact.

The Court, however, ought to provide some additional guidance for the County should it choose to enact new spatial location regulations. The *North Ave. Novelties v. City of Chicago,* 88 F.3d 441 (7th Cir.1996) court addressed a Chicago statute similar to that of Howard County, in that it set a minimum distance between adult uses and also set a minimum distance between any adult use and any school, place of worship, or district zoned for residential use. *Id.* at 443 ("adult uses are only permitted if they are located at least 1,000 feet from (a) any existing adult use; (b) any existing school or place of worship; and (c) any district zoned for residential use.") (quoting Chicago, Ill. Municipal Code §§ 17–9.3–2(B)(6) & 17–9.3–3(A)(4) (1992)). In this way, the Chicago statute combined the provisions of two zoning schemes that the Supreme Court previously upheld:

> One which dispersed adult uses by requiring that they be 1,000 feet from each other, see *Young v. American Mini Theatres,* 427 U.S. 50, 96 S.Ct. 2440, 49 L.Ed.2d 310 [(1976)], and one that concentrated them by requiring that they be 1,000 feet from residential areas, schools, and places of worship, see [*Renton v. Playtime Theatres,* 475 U.S. 41, 106 S.Ct. 925, 89 L.Ed.2d 29]. Novelties contends, however,

that while both of these schemes may have been constitutional in their respective cities, the Chicago Zoning Ordinance violates the First Amendment by merging the strategies and applying them to Chicago. We agree that the holdings of *Young* and *Renton* cannot merely be "combined" to conclude that the Chicago zoning scheme is necessarily constitutional; instead the scheme, as it is applied to Chicago's geographic area, must be considered. . . . [I]n analyzing Chicago's scheme, it is necessary to focus both on the ability of producers as a group to provide sexually explicit expression, as well as on the ability of the public as a whole to receive it.

*Id.* at 444.[15] Like the Chicago ordinance, Howard County's future, if any, zoning regulations limiting access to adult entertainment businesses will require particularized analysis

---

**15.** The *North Ave. Novelties* court found that even with the 1000 foot exclusion zones that both concentrated and dispersed adult uses, there was a reasonable opportunity for adult-oriented businesses to operate in Chicago and reasonable public access to them. The 1000 foot zones in that case are considerably larger than the 500 foot zones in §§ 128.-H.2.b-e in the present case. One thousand foot zones have been upheld by many courts. *See Los Angeles v. Alameda Books, Inc.*, 535 U.S. 425, 122 S.Ct. 1728, 152 L.Ed.2d 670 (2002) (upholding a statute that provided for set-offs of 500 feet from residential areas, schools and religious facilities as well as 1000 feet from other adult businesses), *Renton v. Playtime Theatres*, 475 U.S. 41, 106 S.Ct. 925, 89 L.Ed.2d 29, (adult businesses must be 1000 feet from schools, religious establishments, and residential areas), *Young v. American Mini Theatres*, 427 U.S. 50, 96 S.Ct. 2440, 49 L.Ed.2d 310 (1976) (adult businesses must be 1000 feet from one another). On the other hand, the Supreme Court never has upheld a regulation providing for a 2500 foot exclusion zone like that in § 128.H.2.a, nor has such a large exclusion zone been upheld in any Maryland case. A provision like § 128.H.2.a creates a circle around any existing adult entertainment business within which no new adult entertainment business may be established. A circle with a radius of 2500 feet is twenty-five times larger in area than one with a radius of 500 feet and more than six times larger than one with a radius of 1000 feet. Such a large expansion from previously sanctioned standards is not unconstitutional *per se*, but given that a 1000 foot standard was found sufficient in such diverse places as Los Angeles, *see Alameda*, Chicago, *see North Ave. Novelties*, and the city of Renton, Washington, *see Playtime Theatres*, Howard County would need to present special justification why a 2500 foot exclusion zone, rather than a smaller one, is necessary if it chooses to re-enact that provision.

based on the total effect of the regulations, the county's geography, and its market for this type of commerce. Howard County may choose to consolidate its adult entertainment businesses or to separate them. It may even do both. No matter what policy the County Council adopts, it must provide a reasonable opportunity for adult entertainment businesses to operate and it cannot unduly limit alternative avenues of communication.

In the present case, I would affirm in part and reverse in part the judgments below.