920 A.2d 482

**104 WEST WASHINGTON STREET II CORPORATION**

v.

**CITY OF HAGERSTOWN, Maryland, et al.**

**No. 1377, Sept. Term, 2005.**

Court of Special Appeals of Maryland.

April 3, 2007.

554

556

Howard J. Schulman, Baltimore, for appellant.

Kevin Karpinski (Victoria Shearer, on brief), Baltimore, for appellee.

Panel ADKINS, KRAUSER, JAMES A. KENNEY, III,* (Retired, Specially Assigned), JJ.

KRAUSER, J.

Appellant 104 West Washington Street II Corporation brought a declaratory judgment action in the Circuit Court for Washington County against the City of Hagerstown ("City"). The City's "Adult Businesses Ordinance," it claimed, violated appellant's right to free speech under the First Amendment of the United States Constitution and Article 40 of the Maryland Declaration of Rights. The Ordinance required, among other things, that "certain adult-oriented businesses" in the City apply for and obtain licenses, limit their hours of operation, and ensure that their booths, cubicles and other enclosed areas for viewing adult videos were not completely closed. The complaint also included a claim against P.L. Smith, a Hagerstown police officer who had, it alleged, "threatened and intimidated" appellant's employees for failing to comply with the terms of the Ordinance. But this claim was later dropped, leaving the City as the only defendant.

The City responded with a motion for summary judgment. The circuit court granted that motion in part, declaring that the Ordinance was "constitutional in every other respect" except for its failure to provide a time limit for issuing or

---

* Kenney, J. participated in the hearing and conference of this case while an active member of this Court; he participated in the adoption of this opinion as a retired, specially assigned member of this Court.

rejecting an adult business's application for a license. The City promptly amended the Ordinance so that it included a time limit for issuing or denying an adult business license and renewed its motion for summary judgment. That motion was granted in full, triggering this appeal.

Appellant presents three issues for our review. As set forth in its brief, they are:

I. Whether the circuit court erred in declaring the Ordinance constitutional, given the absence of any evidence in the legislative record, according to appellant, showing that the restrictions placed upon communication serve a significant state interest and that the Ordinance is narrowly drawn so as to render any incidental restriction upon freedom of speech no greater than necessary;

II. Whether the circuit court erred in considering documents that the City provided in support of its motion for summary judgment because these documents, according to appellant, did not meet the affidavit requirements under the Maryland Rules;

III. Whether the circuit court erred in finding that the Ordinance was not an unconstitutional prior restraint of speech, despite its failure, according to appellant, to provide for appellate-level judicial review of the City's decision to deny, revoke, or suspend an adult business license.

For the reasons that follow, we affirm the judgment of the circuit court.

## Background

There is no dispute as to the facts of this case. Appellant owns and operates a business at 23 E. Washington Street in Hagerstown that sells books, magazines, video, lingerie and novelties that are "adult" in nature. At the back of its store, appellant provides booths for customers to view adult videos. The store has been Hagerstown's only adult business since 1990.

Prior to September 2002[1], Hagerstown Chief of Police Arthur Smith reportedly received complaints of illegal drug activity occurring at appellant's place of business during the early morning hours before 6:00 a.m. The complaints were made by employees of WHAG, a local television station that occupied a building adjacent to appellant's business, and by tenants of two nearby apartment complexes. According to Chief Smith, the employees and the tenants expressed considerable concern as to their personal safety. Chief Smith conveyed their concerns to the Hagerstown Police Department's Street Crimes Division for further investigation and passed them along to other city officials as well.

During this time, Chief Smith met with a man who claimed he had contracted Autoimmune Deficiency Syndrome ("AIDS") after engaging in "hundreds" of homosexual encounters at appellant's place of business. "Heterosexual men," he informed Smith, were performing homosexual acts at appellant's business in exchange for money to support their drug habits. The acts took place by means of "glory holes" in the partitions that separated the video-display booths at the back of appellant's store. He feared that the heterosexuals, who had contracted sexually transmitted diseases by engaging in homosexual acts at appellant's business, might retaliate against the City's gay community. Chief Smith notified City officials of the man's concerns.

Some time later, Chief Smith, accompanied by Hagerstown City Attorney Mark Boyer and City Administrator Bruce Zimmerman, conducted an on-site inspection of appellant's business. At that time, Chief Smith stated, he "personally observed the 'glory holes' which had been described to [him] by the man who [had] contracted AIDS."

On May 30, 2002, the Washington County Health Department issued an order requiring appellants to "cease and desist all structural activities [glory holes] that enable sexual contact

---

1. In his affidavit, Police Chief Arthur Smith stated only that the complaints were made "prior to September 2002," implying that these complaints were made shortly before that date.

[to] tak[e] place" because "said structural activity constitutes a dangerous condition and/or nuisance that could facilitate the spread of Sexually Transmitted Diseases and must be abated immediately."

### The Ordinance

On September 5, 2002, City Interim Planning Director Deborah Everhart sent City Administrator Bruce Zimmerman a memorandum proposing an Adult Business Ordinance. The ordinance, according to Everhart, would regulate the "time, place, and manner" in which the City's adult businesses operated. Copies of Everhart's memorandum were sent to the Mayor and City Council members, as well as to the City Clerk, City Attorney, and City Finance Director.

On October 22, 2002, "the Mayor and City Council," as noted in the minutes of the Council's 22nd Session, "unanimously agreed by voice vote to adopt [the] Ordinance," which was incorporated into Chapter 46 of the Hagerstown City Code as §§ 46–1, 46–2, 46–3, 46–4, 46–5 and 46–6:

§ 46–1. Purpose. The purpose of this Ordinance is to protect the health, welfare, safety, morals and general welfare of the citizens of the City by addressing the deleterious secondary effects of certain adult oriented businesses operating within the City; to prevent the impairment of, or detriment to neighboring properties; to promote safe, sanitary conditions and combat the spread of sexually transmitted disease; and to protect children who may be attracted to such establishments. This chapter does not have, and is not intended to have the purpose or effect of imposing a limitation or restriction on the content of any communicative material, or to infringe upon the reasonable exercise of a legitimate business.

§ 46–2. Definitions. For purposes of this chapter the following terms shall have the following meanings:

A. Adult business. Any commercial establishment located in the City that:

I.   has 5% or more of its stock on the premises, or has 5% or more of its stock on display, in books, magazines, periodicals, photographs, drawings, sculptures, motion pictures, films, videos or other similar images by any medium which depict specified sexual activities or anatomical areas;

II.  displays on its premises, or provides for display or viewing on its premises, any motion pictures, films, videos or other similar images by any medium which depict specified sexual activities or specified anatomical areas;

III. has 5% or more of its stock on the premises, or more of its stock on display in products, devices or novelties designed or sold primarily for the purpose of stimulation of human genitalia, or other sexual gratification.

§ 46.–3  **License required.**  It shall be unlawful for any person to own, operate, manage or maintain an adult business in the City without first obtaining an adult business license from the Department . . .

§ 46–4  **Application for license; fee**  An applicant for an adult business license shall register with and provide the following information on the appropriate application form provided by the Department:

A.   The address at which the adult business will be operated.

B.   The name, street address and telephone number of all owners of the adult business.

C.   If the owner of the adult business is not an individual, the applicant shall provide the name, street address, resident agent, resident agent address and telephone number of the owner.  Applicant shall further provide the names, addresses and telephone numbers of all individuals or entities who own or have any interest in the entity which owns the adult business.

D.   The name, street address and telephone number of a designated contact person for the owner(s)

E.   A non-refundable annual license fee of $250.00.

§ 46–5.   **Adult business regulations.**   The following regulations shall apply to all adult businesses in the City:

A.   No adult business shall operate or be open to the public between the hours of 1:00 a.m. and 6:00 a.m.

B.   No adult business shall be located within 500 feet of another legally operating and licensed adult business. Adult businesses existing and actually operating on the effective date of this chapter shall be exempt from this regulation.

C.   No adult business shall permit anyone under the age of 18 years of age to be on the premises of the adult business for any purpose.

D.   No booth, cubicle or area used for viewing motion pictures, films, movies, videos or other similar images by the general public shall be capable of being completely closed.  Any such booth, cubicle or area shall be and remain open at all times.

E.   No booth or cubicle used for viewing motion pictures, films, movies, videos or other similar images by the general public shall have any holes or openings, nor shall any booth or cubicle be accessible by any adjacent booth or cubicle, except for the primary opening for ingress and egress to said booth or cubicle.

§ 46.6.   **Denial; revocation or suspension.**   An adult business license may be denied, revoked or suspended at any time by the Department if after receipt of written notice, the owner fails to immediately eliminate any violations of the regulations contained herein.  Denial, revocation or suspension of an adult business license shall be in addition to, and in substitution of the penalties provided for in § 46–8 of this chapter.

Of particular relevance to the issue that gave rise to this action were § 46–4(C), § 46–5(E) and § 46. 6. Section 46–4(C) required each adult business license applicant to disclose the names, addresses and telephone numbers of all individuals or entities having an ownership interest in the business.  Section

46–5(E) prohibited licensed adult businesses from "complete[ly] closing" any "booth, cubicle or area used for viewing motion pictures, films, movies, videos or other similar images by the general public." And § 46.6 set forth the requirements for denying an adult business license and revoking or suspending a license that had already been issued.

### Appellant's Complaint

On March 6, 2003, appellant filed a complaint in the Circuit Court for Washington County against the City and Hagerstown Officer P.L. Smith. The complaint alleged that, on March 3, 2003, Officer Smith and an unnamed city attorney went to appellant's place of business and threatened to arrest its employees unless they complied with the terms of the Ordinance[2] which required them to shut down the store between 1 a.m. and 6 a.m. and ensure that none of the video booths located on the premises were, at any time, completely closed.

Count one of appellant's complaint sought a declaration that the Ordinance violated Article 40 of the Maryland Declaration of Rights because it was "not narrowly drawn . . . [did] not provide for alternative avenues of communication . . . lack[ed] effective limitations of the time for an administrative decision . . . fail[ed] to provide for prompt judicial review" and "constitute[d] an unreviewable prior restraint on free speech."

Count two requested that Officer Smith be enjoined "from further acts of intimidation and acts of reprisal against [appellant]," which "constitute[d] a chilling effect upon [appellant's] free speech" and "caused [appellant] economic harm." And appellant requested that the circuit court "enter judgment . . . in the amount of One Hundred Thousand Dollars ($100, 000)" against the officer and the City.

---

2. Eleven days after this purported incident, on March 14, appellant applied for, and was granted, an adult business license by the City, pursuant to the Ordinance.

## Proceedings Below

At the City's request, the case was removed to the United States District Court for the District of Maryland because appellant, in the City's words, "[wa]s alleging that [the City] violated its rights of free speech, presumably under the First Amendment to the United States Constitution." But the federal court ultimately sent the case back to the circuit court after appellant abandoned that claim.

Then, in September 2003, the Court of Appeals, in *Pack Shack v. Howard Co.*, 377 Md. 55, 832 A.2d 170 (2003), declared a Howard County ordinance unconstitutional because it conditioned the grant of licenses to operate adult businesses on certain mandatory disclosures: specifically, that each adult business license applicant state the name and address of all natural persons having a financial interest in the business. Relying solely on that decision, appellant moved for partial summary judgment, asserting that "[t]he requirements for licensure set forth" under the Hagerstown Adult Business Law were "unconstitutional and in violation of the Maryland Declaration of Rights Article."

Filed on June 24, 2004, appellant's motion for partial summary judgment was still pending before the circuit court one month later when the City Council repealed § 46–4(C), as it required the same type of information requested by Howard County in *Pack Shack.* Following that amendment, the City filed a cross motion for summary judgment.

To its summary judgment motion, the City attached copies of the Health Department order requiring appellants to "cease and desist all structural activities that enable sexual contact," the agenda and minutes for the September 10th, September 24th and October 22nd Mayor and City Council meetings; appellant's adult business license application; and answers to interrogatories propounded by both sides.

On August 2, 2004, appellant filed a motion to strike the City's exhibits, principally the City's answers to interrogatories. Appellant argued that the answers were hearsay and

inadmissible under Rule 2–501(c) as "an affidavit supporting or opposing a motion for summary judgment."

In response, the City supplemented its motion with the following exhibits: an affidavit signed by Chief Smith, a copy of the September 5th memorandum from City Interim Planning Director Deborah Everhart to Administrator Bruce Zimmerman containing the proposed Adult Businesses Ordinance, and a copy of the amended Ordinance. Thereafter, the circuit court denied appellant's motion to strike on the grounds that the City had "supplied the appropriate affidavit," apparently referring to Chief Smith's sworn statement.

A hearing on the City's motion for summary judgment ensued. Following that hearing, on November 3, 2004, the court issued a memorandum opinion denying the City's request for summary judgment as to count one of appellant's complaint, while noting that the Ordinance was, in fact, "enforceable, except for the deficiency found due to there being no time standard to decide to issue or reject a business license." But it granted the City summary judgment as to count two of appellant's complaint, pointing out that the police officer, whom appellant claimed had threatened and intimidated its employees, was no longer a party to the suit, and that appellant "had admitted in its answer to interrogatories that ... [count two] applie[d] to the police officer and not to the [City]."

On February 25, 2005, the City amended the Ordinance again. It inserted § 46–4(F), mandating that adult business licenses be issued or denied within 30 days of application. It also added a sentence to § 46–6, stating that "[a]ny applicant or licensee who has a license denied, revoked or suspended shall have the right to appeal such action of the Department to the Circuit Court for Washington County, Maryland, within (30) days of receipt of the notice of said action."

On March 15, 2005, the City again moved for summary judgment based on the re-amended Ordinance. Two weeks later, appellant modified its complaint to include the contention that "[t]he disclosure requirements in the Hagerstown

Adult Bookstore Law, as provided in § 46.4 thereof, constitute an unconstitutional prior restraint on free speech."

On June 30th, the court issued an order granting the City's motion for summary judgment. It held that the Ordinance, as amended, was "constitutional and violate[d] nether [sic] Maryland Declaration of Rights, the Maryland Constitution, nor The Constitution of the United States."

## DISCUSSION

### I.

Appellant contends that the circuit court erred in holding that the Ordinance was constitutional. It claims that there is nothing in the legislative record to indicate that the City Council had information or evidence before it, prior to the enactment of the Ordinance, sufficient to establish that the law would serve a significant state interest and would be narrowly tailored so as to render any incidental restriction upon freedom of speech no greater than necessary. Consequently, the Ordinance, appellant claims, violates both Article 40 of the Maryland Declaration of Right[3] and the First Amendment of the United States Constitution.[4]

In alleging that the Ordinance is unconstitutional under the First Amendment, appellant has revived a claim that it previously abandoned when its complaint was before the United States District Court for the District of Maryland. In fact, it

---

**3.** Article 40 of the Declaration of Rights provides as follows:
**FREEDOM OF PRESS AND SPEECH.**
That the liberty of the press ought to be inviolably preserved; that every citizen of the State ought to be allowed to speak, write and publish his sentiments on all subjects, being responsible for the abuse of that privilege.

**4.** The First Amendment to the United States Constitution states:
**FREEDOM OF RELIGION, OF SPEECH AND OF THE PRESS; PEACEFUL ASSEMBLAGE; PETITION OF GRIEVANCES:**
Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances.

was appellant's abandonment of that claim that prompted the federal district court to send appellant's case back to the circuit court for resolution.

■ In any event, because there is no dispute that appellant's Article 40 claim was properly before the circuit court and because Article 40 of the Maryland Declaration of Rights is *"in pari materia* with the First Amendment" and, thus, the "legal effect" of both provisions "is substantially the same," *Sigma Delta Chi v. Speaker,* 270 Md. 1, 4, 310 A.2d 156 (1973) we shall consider appellant's two contentions—that the Ordinance violates Article 40 and the First Amendment—as a single claim.

■ To survive constitutional scrutiny, an ordinance regulating speech must be a " 'content-neutral time, place and manner [speech] restriction' " which is " 'narrowly tailored to serve a significant governmental interest' " and " 'leave[s] open ample alternative channels for communication.' " *Pack Shack,* 377 Md. at 67, 832 A.2d 170 (*quoting State v. Sheldon,* 332 Md. 45, 54, 629 A.2d 753, 758 (1993)) (citations omitted). The circuit court held, and we agree, that the Ordinance satisfies those requirements.

In fact, appellant does not dispute the circuit court's ruling that the Ordinance is a "content-neutral time, place and manner restriction," or that it "leaves open ample alternative channels for communication." *Id.* But it does insist that the circuit court had no basis for finding that the Ordinance was " 'narrowly tailored to serve a significant governmental interest.' " *Id.* To meet this requirement, appellant argues, the City was required to demonstrate, by means of "pre-enactment evidence" contained in the Ordinance's legislative record, that this regulation was intended to address specific "negative secondary effects" and was narrowly drawn to render any incidental restriction upon speech no greater than necessary. There was none, appellant claims. The legislative record underlying the Ordinance, it maintains, is devoid of any pre-enactment evidence of the specific "negative secondary effects" associated with businesses that sell adult books and

videos. And, absent such pre-enactment evidence, "[t]he supplemental materials submitted by the City to the Circuit Court," appellant claims, "cannot sustain [the] regulation[ ]" at issue.

To buttress its position, appellant cites *City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 106 S.Ct. 925, 89 L.Ed.2d 29 (1986), and one of its offspring, *11126 Baltimore Boulevard v. Prince George's County*, 886 F.2d 1415 (4th Cir.1989). But these cases, as we shall see, subvert more than they support appellant's position.

In *Renton*, Playtime Theatres filed an action in federal district court against the City of Renton, Washington, seeking a determination by that court that the municipality's zoning ordinance, prohibiting adult motion picture theaters from locating within 1,000 feet of any residential zone, church, park, or school. Granting summary judgment in Renton's favor, the district court held that the ordinance did not violate the First Amendment. But the Ninth Circuit disagreed, and reversed that decision. The ordinance, it ruled, violated Playtime Theatres' "first amendment interests" because it posed a "substantial restriction on speech," and because Renton "had little empirical evidence before it to demonstrate the alleged deleterious effects of adult theaters" that the ordinance was purported to regulate. *Playtime Theaters, Inc., v. City of Renton*, 748 F.2d 527, 537 (1984).

But the Ninth Circuit's ruling was, in turn, reversed by the Supreme Court. It upheld the zoning ordinance, declaring that "the First Amendment does not require a city, *before* enacting such an [adult theater zoning] ordinance, to conduct new studies or produce evidence independent of that already generated by other cities." Rather, the First Amendment only requires, the Supreme Court stated, that " 'whatever evidence the city relies upon [be] reasonably believed to be relevant to the problem that the city addresses.' " 475 U.S. at 51–52, 106 S.Ct. 925.

The *"Renton* test," as it has become known, was invoked by the Fourth Circuit in *11126 Baltimore Blvd.* In that case, the

federal district court struck down as unconstitutional a county ordinance, which, among other things, limited the location of adult bookstores "[c]ounty [c]ouncil did not have before it at the time it took action. . . . 'substantial evidence' which provided a factual basis for the Council's conclusion that the regulated businesses actually produced negative secondary effects and the restrictions would advance the stated governmental interests." 886 F.2d at 1422. In so holding, the district court applied the same standard appellant relies on in arguing that the Ordinance at issue is invalid, namely, the requirement that the legislative record surrounding the Ordinance contain pre-enactment evidence demonstrating the "negative secondary effects" of the particular adult businesses that the law was intended to regulate.

But this requirement, the Fourth Circuit declared, " 'imposed . . . an unnecessarily rigid burden of proof' " on the county council. *Id. (quoting Renton,* 475 U.S. at 50, 106 S.Ct. 925). The *Renton* test does not require, it avowed, extensive pre-enactment evidence in the legislative record. On the contrary, the Fourth Circuit observed:

> [L]ittle more than general, nonscientific and conclusory statements about sexually oriented businesses and their negative secondary effects met [Renton's] burden of proof. 886 F.2d at 1422.

In applying the *Renton* test to the county ordinance, the Fourth Circuit "review[ed] the reasonableness of [the ordinance] not solely on the basis of the legislative record before [the county council], but of what it reasonably foresaw." 886 F.2d at 1423. In so doing, it noted that "[i]t defies common sense to suppose that community leaders in [the county] were not aware of comparable conditions in other localities. Consequently, we must," the federal appellate court continued, "assume that a proper factor in this local legislative determination of governmental interests was what was demonstratively deemed generally experienced in similarly situated communities." *Id.* It then concluded that the county council had relied upon "what was demonstratively deemed generally experienced in similarly situated communities," that this evi-

dence was reasonably related to the ordinance the council enacted, and, hence, the ordinance met the *Renton* test.

The *Renton* test was applied by this Court in *Landover Books v. Prince George's Co.*, 81 Md.App. 54, 566 A.2d 792 (1989). We observed that

[t]he test set forth in *Renton* does not require specific data in the record. Instead, the test is whether the Council, when enacting the ordinance, had evidence which it reasonably believed was relevant to the problems the County sought to address. *Id.* at 73, 566 A.2d 792 *(quoting Renton,* 475 U.S. at 51–52, 106 S.Ct. 925).

In determining that the Prince George's County ordinance at issue satisfied the *Renton* test, we further noted that statutes similar to the subject ordinance have been upheld on legislative records containing less evidence than in the instant case. In *Hart Book Stores,* the North Carolina Legislature had little more than the results of an inspection conducted by a county health officer whose report was read by a sponsoring senator to a legislative committee. *Hart Book Stores,* 612 F.2d at 828–29 n. 9. Furthermore, in *Wall Distributors[, Inc. v. City of Newport News,* 782 F.2d 1165, 1169 n. 6 (4th Cir.1986)], the only evidence presented prior to the enactment of the regulation was an arrest record and one affidavit averring that illegal sexual activity occurred in video booths. Accordingly, we conclude that the County's reliance upon the record evidence before it was not unreasonable. *Landover Books,* 81 Md.App. at 75, 566 A.2d 792.

■ As did their counterparts in *Landover Books,* local officials in the instant case received correspondence about the alleged "negative secondary effects" of appellant's adult business from concerned citizens in the community, namely, from employees and tenants in the vicinity of appellant's store, as well as from the man who claimed to have contracted AIDS as a result of his sexual activities at the store.

Moreover, prior to the enactment of the Ordinance, the City Health Department inspected and documented the "dangerous condition[s]" existing at appellant's store, and Police Chief

Smith, City Administrator Zimmerman and City Attorney Boyer also visited the premises and observed the health and sanitation hazards there. Chief Smith averred in his affidavit that he passed along his observations, and the complaints he received from members of the community, to City officials. And Chief Smith, Administrator Zimmerman and Attorney Boyer were all present at the September 10, 2002 City Council work session when the Ordinance was discussed and considered.

■ The City officials' inspections and observations constituted evidence which the City Council, in the words of *Renton*, "reasonably believed was relevant to the problems [it] sought to address" in enacting the Ordinance. 475 U.S. at 51–52, 106 S.Ct. 925 (*quoted in Landover Books*, 81 Md.App. at 73, 566 A.2d 792), and that was reflected in the preamble of the Ordinance, which stated that its purpose was to "address[ ] the deleterious secondary effects of certain adult oriented businesses operating within the City" by "prevent[ing] the impairment of, or detriment to neighboring properties ... promot[ing] safe, sanitary conditions and combat[ing] the spread of sexually transmitted disease ..." And these "deleterious secondary effects," we conclude, were reasonably related to the evidence on which the City purportedly relied in enacting the Ordinance, namely, reports from citizens in the community regarding unsafe conditions and the increased risk of sexually transmitted diseases, as well as the observations of Chief Smith and other City officials concerning the dangerous conditions on the premises. Moreover, we may also assume, as the Fourth Circuit did in *11126 Baltimore Blvd.*, that "community leaders" were "[ ]aware of comparable conditions in other localities and of the varied responses being attempted by other governments to similar conditions'" 886 F.2d at 1423.

■ Still, appellant asserts in its brief that "[t]here is absolutely no indication that this information was before the City Council" at the time the Ordinance was enacted. But that, according to *Renton*, is beside the point. Under *Renton*, a municipality need not demonstrate a definite time, prior to

enactment, that it considered the evidence it purportedly relied upon in enacting the ordinance. Rather, it must only show that "whatever evidence [it] relie[d] upon [was] *reasonably believed* to be relevant to the problem that [it] addresse[d]." 475 U.S. at 51–52, 106 S.Ct. 925. The City has done so in this case. Thus, we hold that the circuit court did not err in ruling that the City's Ordinance passed constitutional muster.

■ In an attempt to bolster its flagging position, appellant further argues that "[t]here was no evidence that enforcement of existing laws would not address any real or perceived problems" addressed by the regulation. But that argument has little bearing on the constitutionality of the Ordinance. The City has no constitutional obligation to limit itself to the least restrictive means of addressing the secondary effects targeted by the Ordinance. *Bigg Wolf Discount Video Movie Sales, Inc. v, Montgomery County,* 256 F.Supp.2d 385, 394 (D.Md.2003) (holding that content-neutral time, place and manner-based "ordinance need not adopt the least restrictive alternative by focusing on the precise adverse effects cited in the studies in order to pass constitutional muster"). On the contrary, city officials must have " 'a reasonable opportunity to experiment with solutions to admittedly serious problems,' " such as the deleterious effects that the Ordinance was intended to address. *Id. (citing Young v. American Mini Theatres,* 427 U.S. 50, 71, 96 S.Ct. 2440, 49 L.Ed.2d 310 (1976)) (plurality opinion).

## II.

Appellant further argues that the circuit court erred in considering the following documents in support of the City's motion for summary judgment: 1) the City's interrogatory answers signed by City Administrator Zimmerman and Chief Smith's affidavit in support of the City's motion for summary judgment; 2) the Washington County Health Department abatement order; and 3) the September 5, 2002, memorandum from City Interim Planning Director Deborah A. Everhart to

Administrator Zimmerman. Those documents, according to appellant, did not comply with the affidavit requirements of the Maryland Rules.

█ Rule 2–501(a) requires that a motion for summary judgment be supported by an affidavit if it is "filed before the day on which the adverse party's initial pleading or motion is filed" or is "based on facts not contained in the record." Rule 2–501(c) states that affidavits filed in support or opposition to motions for summary judgment "shall be made upon personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated in the affidavit." And Rule 2–311(d) states that "[a] motion or a response to a motion that is based on facts not contained in the record shall be supported by affidavit and accompanied by any papers on which it is based." Because a court has "no right" to consider any "fact" set forth by a party in violation of Rule 2–311(d), *Scully v. Tauber*, 138 Md.App. 423, 431, 771 A.2d 550 (2001), appellant claims that the circuit court erred in relying on the aforementioned documents in granting the City's motion for summary judgment.

█ The interrogatory answers, signed by Administrator Zimmerman and offered in support of the City's motion for summary judgment, were insufficient in form under Rule 2–501(c), appellant claims, because they were made "to the best of [Zimmerman's] information, knowledge and belief," rather than on the basis of his personal knowledge. We agree that, without more, these interrogatory answers would not have complied with that Rule. *Fletcher v. Flournoy*, 198 Md. 53, 58, 81 A.2d 232, (1951) (holding that an affidavit stating that it was " 'to the best of his knowledge, information and belief' " must be disregarded.), *cert. denied*, 343 U.S. 917, 72 S.Ct. 649, 96 L.Ed. 1331 (1952).

But, as we noted above, the circuit court denied appellant's motion to strike only after Chief Smith filed a supplementary affidavit which, the City asserts, attested to the same facts set forth in its interrogatory answers. We agree that all of the

evidentiary facts contained in the City's interrogatory answers supporting its summary judgment motion—that is, the complaints from residents and business owners concerning alleged illicit activities in the back of appellant's store in the early hours of the morning before 6:00 a.m. and the concerns raised by the man who claimed to have contracted AIDS at the store—were supported by Chief Smith's affidavit. Therefore, the City's answers to interrogatories were admissible under Rule 2–311(d) provided that Chief Smith's affidavit was itself admissible under Rule 2–501(c). And it was.

■ Chief Smith averred in the body of his affidavit that he was "competent to testify" and had "personal knowledge of the facts ... set forth herein." Appellant nonetheless challenges the legal validity of the affidavit, noting that, with the exception of Chief Smith's observations of "glory holes" at appellant's store, his "affidavit contained mostly hearsay and was not admissible for the truth of the matters asserted." But appellant misconstrues the nature of the "facts" set forth in Chief Smith's affidavit. They were not, as appellant contends, offered as evidence that hundreds of homosexual encounters and HIV transmissions had actually taken place at appellant's store. Rather, they were offered as evidence of the "health and safety concerns that [had been] raised" by neighboring residents about appellant's store, which prompted the City to enact the Ordinance. Thus, it was not necessary that Chief Smith verify the truth or falsity of the residents' concerns, but only affirm that those concerns had been personally expressed to him.

■ Similarly, as the City notes in its brief, the Health Department abatement order was not offered for the facts it contained, that is, to prove that appellant's store actually had "glory holes," or that it failed to abate said "glory holes." Rather, like the complaints received by Chief Smith, the order was produced as part of the evidentiary "foundation" that was "reasonably believed to be relevant" to the secondary effects addressed by the Ordinance in accordance with *Renton,* 475 U.S. at 51, 106 S.Ct. 925. Moreover, because there was no

indication that the circuit court considered the Order "for the truth of the matter" in its decision to award summary judgment, we see no basis for error.

Finally, the September 5th memorandum from Interim Planning Director Everhart to Administrator Zimmerman was, by appellant's own admission, merely a restatement of the Ordinance itself. Therefore, it did not constitute an allegation based on facts not contained in the record, and the circuit court, to the extent that it even considered this memorandum in rendering its opinion—and it is unclear to us that that occurred—did not commit reversible error.

## III.

Appellant next argues that the circuit court erred in holding that the Ordinance did not constitute an unconstitutional prior restraint of speech. Specifically, the appellant asserts that the "prior restraint of the [Ordinance's] licensing provision is not saved from a facial challenge" because it does not provide the appropriate level of judicial review.

The circuit court ruled that, even though the plain text of the Ordinance did not itself provide for prompt judicial review, it did not constitute an impermissible prior restraint because the "Maryland Rules enable the court to handle challenges to this sort of ordinance, effectively and expeditiously." Appellant counters, however, that *City of Littleton v. Z.J. Gifts D-4, LLC ("Littleton")*, 541 U.S. 774, 124 S.Ct. 2219, 159 L.Ed.2d 84 (2004) requires more—both judicial review by the circuit court and appellate review of the circuit court's decision. But that argument, as the City noted in its brief, was not raised below. Although appellant did cite *Littleton* in its opposition to the City's second motion for summary judgment, it did so solely in support of its claim that the Ordinance was unconstitutional because it did not have a provision for maintaining the status quo during an appeal of a licensing revocation, denial or suspension.

Because appellant's argument as to the appropriate level of judicial review was not raised before the circuit court, we need

not consider it here. But, even if it had been preserved for our review, we would find no merit in it.

■ In *Littleton*, the Supreme Court stressed that "nothing in" the two prior restraint cases on which it relied— *FW/PBS v. City of Dallas*, 493 U.S. 215, 110 S.Ct. 596, 107 L.Ed.2d 603 (1990) and *Freedman v. Maryland*, 380 U.S. 51, 85 S.Ct. 734, 13 L.Ed.2d 649 (1965)—"requires a city or State to place judicial review safeguards all in the city ordinance that sets forth a licensing scheme." 541 U.S. at 775, 124 S.Ct. 2219. Indeed, where "the regulation conditions the operation of an adult business on compliance with neutral and nondiscretionary criteria," and "does not seek to censor content," a state's "ordinary rules of judicial review are adequate," the Court opined. *Id.* at 784, 124 S.Ct. 2219. In the instant case, the circuit court, having found the Ordinance to be such a regulation, appropriately concluded that Maryland's "ordinary rules of judicial review" provided such a satisfactory safeguard.

Appellant argues, however, that the Ordinance did not contain "neutral and non-discretionary requirements" and, therefore, more judicial oversight is necessary than the Maryland Rules provide. Specifically, appellant maintains, the Ordinance "does not contain any mandatory language that would eliminate the discretion" of officials charged with issuing adult business licenses. But this assertion is contrary to the plain language of the Ordinance. Indeed, the Ordinance expressly requires City officials to issue an adult business license to any applicant that submits the information specified in § 46–4.

■ Appellant counters that, even if an applicant satisfies § 46–4, the Ordinance still gives City officials the discretion to withhold a license, noting that, under § 46–6, " '[a]n adult business license may be denied . . . if after receipt of written notice, the [adult business] owner fails to eliminate any violations of the regulations contained [under § 46–5]' " The use of the term, "may" in this provision, according to appellant, means that "[t]here is no limiting language in § 46–6 that a

license can only be denied for a violation of § 46–5." But that interpretation strains credulity. Appellant would have been more persuasive if the Ordinance stated that "[a]n adult business license *may* be *awarded*" if the adult business owner complies with the requirements of § 46–4 and has no violations under § 46–5. But it does not. Instead, it only grants City officials the discretion to deny licenses to adult businesses when those businesses fail to meet certain criteria. In other words, while the Ordinance provides that officials may deny a license if there is a violation of § 46–5, it does not state that they may deny a license on any other grounds. Therefore, assuming that the business is not in violation of § 46–5 and has submitted all the information required by § 46–4, the Ordinance provides that a license *must* be granted, as indeed, one was in appellant's case.

**JUDGMENT AFFIRMED. COSTS TO BE PAID BY APPELLANT.**